# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARY IBARA, | No. 60187-7-II |
| Respondent, | |
| v. | |
| GABRIEL KIGAMBA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.—In August 2024, Mary Ibara was granted a five-year, no contact domestic violence protection order against Gabriel Kigamba. Ibara had previously been granted a temporary domestic violence protection order in June 2024, which was extended twice. Kigamba appeals the domestic violence protection order; he argues that the allegations underlying the judgment are not supported by the record and that the superior court overlooked procedural fairness by ruling without reviewing critical exculpatory evidence. Ibara requests attorney fees on appeal.

We conclude that (1) the trial court did not abuse its discretion in granting the domestic violence protection order against Kigamba, as substantial evidence supported a finding that Kigamba subjected Ibara to domestic violence; and (2) Ibara should be awarded attorney fees because Kigamba's appeal was frivolous. Accordingly, we affirm.

FACTS

I. PETITION

Mary Ibara filed for a domestic violence protection order (DVPO) against Gabriel Kigamba in June 2024, which was extended twice. Ibara attached sworn declarations from herself, friends, and a former housemate to her motion for a DVPO. Ibara owns a business, Better Angels Adult Family Home Care LLC, which she runs out of her home. Ibara attested that she and Kigamba were in a romantic relationship until she ended the relationship in December 2021.

Ibara alleged that from 2020 through December 2022, Kigamba forced Ibara to pay his rent "or else he would disclose [her] [HIV status] in the most public manner." Clerk's Papers (CP) at 122, 149. Kigamba would often come to her house unexpectedly and "have sex with [her] against [her] will." *Id.* at 28. He would come in the "middle of the night while [she] was in bed and would just stand over [her]." *Id*. at 27. Kigamba would push her, verbally insult her, call her a whore, and accuse her of sleeping with other men. In a letter to Ibara from Kigamba, dated August 10, 2020, he wrote: "I would like to apologise [sic] for using you; to have sex with me against your will[,]" "[s]orry for being such an abuser to you," and "I know you were recording me when I was abusing you. I take full responsibility should you decide to take legal measures against me." *Id.* at 31-32.

Ibara further alleged that in 2022, Kigamba pushed her "down hard inside the house," which resulted in her going to the emergency room. *Id.* at 29. In August 2021, after a heated argument over the phone, Kigamba drove to Ibara's house, screamed at her in front of the residents of her nursing home, and "used two hands and pushed [her] down to the floor . . ." and then "pushed [her] up against the wall." *Id*. The following week, he verbally abused her and demanded that she write him checks.

Ibara married another man in January 2023. Kigamba threatened to "report [her] marriage as fraud" to the United State Customs and Immigration Service if her husband ever entered the house. *Id.* at 26. In March 2023, Ibara was diagnosed with cardiomyopathy, which is stress induced.

Ibara also alleged that Kigamba had moved into Ibara's house in December 2023 while Ibara was visiting Africa, which Ibara discovered when she returned in January 2024. Ibara and Kigamba each had their own bedroom on the basement floor. In February 2024, Ibara installed a lock on her bedroom door and cameras in all corners for her safety. In May 2024, while Ibara was cleaning, Kigamba "took the broom" and raised it "as if he was going to hit [her] with it." *Id.*

Georgiana Battisonnicol, Ibara's former colleague and close friend, submitted in her sworn declaration that Ibara would confide in her about Kigamba's abuse and financial coercion. Battisonnicol also described her own personal interactions with Kigamba during her "frequent visits to check on [Ibara]," stating that "[h]is threats of legal action for her marriage and delusions of their continued relationship left [Battisonnicol] deeply unsettled." *Id.* at 38. Fatmata Thomas, another close friend of Ibara's, shared in a sworn declaration that she had "witnessed the mental and emotional abuse inflicted upon [Ibara] by her former partner for far too long." *Id.* at 39.

Antony Muverthi was a former housemate of Ibara's when he first arrived in the United States, with an agreement to stay until he "found a job and reasonable accommodation." *Id.* at 41. He moved out because Kigamba would "verbally abus[e] [Ibara] . . . [and] say[ ] things like she wants to sleep with [Muverthi] that why she accommodated [him], calling her a whore and that she needs to ask [Muverthi] to leave, or she will not like the outcome of whatever will happen to her." *Id.* Kigamba stated that Muverthi was untrustworthy and a "drunkard." *Id.* at 239.

3

Kigamba opposed the petition and submitted his own sworn declaration. In this declaration, Kigamba asserted that he had "never physically abused [Ibara]. Neither ha[d] [he] pushed her, or done anything physical to her. [He] never forced her to have sex against her will." *Id.* at 249. He claimed that the relationship did not end in December 2021, and that they were together "on and off." *Id.* at 246. He further claimed, it was Ibara's idea for Kigamba to move into the house to save money on rent and bills. Kigamba also stated that the cameras in the house were installed in 2019 because Ibara's cousin would bring men into the house. Kigamba declared that he was "the one abused and harassed by [Ibara]." *Id.* at 252.

## II. HEARING ON DVPO PETITION

The superior court held a hearing on Ibara's petition in August 2024. Kigamba argued that Ibara did not meet the burden under chapter 7.105 RCW for an allegation of domestic abuse and that this was "more or less a relationship that's gone sour." Verbatim Rep. of Proc. (VRP) at 10. Kigamba asserted that it was Ibara's request that Kigamba move in for the sake of the business when he was having difficulty with his rent in Everett.

The superior court found Ibara to be credible and found that Kigamba was not credible, and concluded that Ibara had proven by a preponderance of the evidence that she was a victim of domestic violence by Kigamba. Kigamba appeals the superior court's order granting the DVPO.

4

ANALYSIS

A. Legal Principles

We review a trial court's issuance of a DVPO for abuse of discretion. *Davis v. Arledge*, 27 Wn. App. 2d 55, 63-64, 531 P.3d 792 (2023). We give substantial deference to the trial court's findings of fact, credibility determinations, and weighing of evidence and will not disturb the trial court's decision unless it is based on untenable grounds. *Burrill v. Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002); *Hudon v. Piffath*, 35 Wn. App. 2d 653, 656, 577 P.3d 944 (2025). It is not the place of the appellate court to revisit a finding of fact if there is substantial evidence to support it, even if contradictory evidence exists. *Burrill*, 113 Wn. App. at 996. Substantial evidence is evidence such that a fair-minded person of truth shall reasonably be persuaded of the matter asserted. *Id*.

Washington law requires the trial court to issue a protection order if it finds by a preponderance of the evidence that the petitioner has been subjected to domestic violence by the respondent. RCW 7.105.225.[1] Domestic violence is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner." RCW 7.105.010(10)(a).[2] Statutory examples of coercive control include "[m]aking, or threatening to make, private information public,

---

[1] RCW 7.105.225 has been amended since the 2024 DVPO. Because this amendment does not affect our analysis, we cite to the current version of the statute. LAWS OF 2024, ch. 298, § 12.

[2] RCW 7.105.010 has been amended since the 2024 DVPO. Because this amendment does not affect our analysis, we cite to the current version of the statute. LAWS OF 2024, ch. 298, § 9.

including the other party's . . . medical or behavioral health information." RCW 7.105.010(4)(a)(i)(G). Intimate partners are defined as "persons who have or have had a dating relationship where both persons are at least 13 years of age or older." RCW 7.105.010(21)(d).

B. Application

It is undisputed that Ibara and Kigamba were intimate partners. The remaining question for the trial court to determine was whether Ibara demonstrated, by a preponderance of the evidence, that domestic violence had occurred.

Kigamba challenges the superior court's findings of domestic violence, arguing that there was no evidence of rape, coercion, or assault. Keeping in mind that the superior court determined that Ibara was credible and that Kigamba was not credible, we address each contention in turn and conclude that the trial court did not abuse its discretion by renewing the DVPO.[3]

1. Evidence of Rape or Lack of Consent

In a letter to Ibara, Kigamba wrote: "I would like to apologise [sic] for using you; to have sex with me against your will[,]" "[s]orry for being such an abuser to you," and "I know you were recording me when I was abusing you. I take full responsibility should you decide to take legal

---

[3] Many of Kigamba's arguments fail to cite the correct authority or acknowledge the substantial contrary evidence. For example, Kigamba incorrectly relies on the criminal standard of "coercion" in RCW 9A.36.070, rather than the definition of "coercive control" relevant to domestic violence in RCW 7.105.010(4)(a). Kigamba also denies the existence of evidence that he assaulted Ibara with a broom and argues that failure to disclose evidence can violate due process without citing any relevant authority. When a party fails to cite authority in support of a proposition, we are not required to search out authorities but may assume none have been found. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We therefore decline to analyze either of these issues. We are also unable to analyze Kigamba's argument regarding shared access to a business email or a premature judgment of a business dispute because that matter is not before us, and there is no reference to either of these matters as the basis for the superior court's conclusions in the DVPO.

measures against me." CP at 31-32. In a sworn declaration, Ibara stated that, in 2023, well after the end of their relationship, Kigamba would enter her home uninvited, "come to [her] bedroom and . . . would have sex with [her] against [her] will." *Id.* at 28. This evidence supports the finding of domestic violence under RCW 7.105.010(10)(a) by way of nonconsensual sexual conduct.

2. Evidence of Coercion

In a sworn declaration, Ibara attested that she had been writing rent checks to Kigamba because "he was using [her] HIV status to threaten [her] that he would go public with it, and [she] had to write the checks so that he could leave [her] alone." CP at 117. Kigamba did not refute this claim in his sworn declaration, but he argued that she was paying his rent prior to him learning of her HIV diagnosis. The superior court found Ibara credible and Kigamba not credible. This evidence supports the finding of domestic violence under RCW 7.105.010(10)(a) by way of coercive control. RCW 7.105.010(4)(a)(i)(G) (defining "[c]oercive control" to include "[m]aking, or threatening to make, private information public, including the other party's . . . medical or behavioral health information").

3. Evidence of Assault

In a sworn declaration, Ibara stated that Kigamba "pushed [her] in the basement hallway, against the wall. He used both hands. He said, 'one of these fine days I will do something, which will make me go to jail.' " CP at 28. She stated that in another incident, Kigamba "pushed [her] down hard inside the house. [She] fell on [her] left side and [she] felt tremendous pain." *Id.* at 29. Further, Ibara also attested to an incident in which Kigamba "took [a] broom [she] was using . . . and he raised the broom as if he was going to hit [her] with it." *Id.* at 26. A multitude of other incidents are recorded in Ibara's sworn declarations and corroborated in Battisonnicol's, Thomas',

and Muverthi's sworn declarations. This evidence, because it was determined by the trial court to be credible, supports the finding of domestic violence under RCW 7.105.010(10)(a) by way of "[p]hysical harm, bodily injury, assault, and infliction of fear of physical harm, bodily injury, or assault."

Considering the evidence presented of domestic violence, the superior court did not abuse its discretion in granting a DVPO.

## ATTORNEY FEES ON APPEAL

Relying on RAP 18.1(a) and RCW 26.09.140, Ibara asks us to award her attorney fees on appeal. We are authorized to order the appellant to pay the respondent's attorney fees on appeal under RCW 26.09.140 when a party's appeal "amounts to little more than an effort to carry on with the same efforts which caused him to lose credibility with the trial court." *In re Marriage of Sievers*, 78 Wn. App. 287, 312, 897 P.2d 388 (1995). Such "intransigence" takes place when an appealing party "has presented no principled arguments justifying a reversal." *Id*. However, chapter 26.09 RCW only applies to dissolution of marriage proceedings. As this is not a marriage dissolution case, chapter 26.09 RCW does not provide a basis for an award of attorney fees to Ibara.

But we may, on our own initiative, award fees for a frivolous appeal. RAP 18.9(a). "[A]n appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914 (2013). We consider the civil appellant's right to appeal an adverse judgment; thus, we resolve any doubts about whether an appeal is frivolous in favor of the appellant. *Id.*

Kigamba did not present any issues on which reasonable minds might differ. He cites no apposite legal authority and erroneously states that the record contains no evidence of rape, coercion, or assault. We therefore find that Kigamba's appeal is frivolous and grant Ibara's request for attorney fees in an amount to be determined by a commissioner of this court under RAP 18.1(f).

CONCLUSION

We conclude that the superior court did not abuse its discretion by granting the DVPO against Kigamba. We affirm. Further, we award Ibara attorney fees under RAP 18.9 because Kigamba's appeal is frivolous.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, J.

VELJACIC, C.J.

9